IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES MICHAEL AVERY and LYNN AVERY, } | |
| Plaintiffs, } | CIVIL ACTION NO. |
| v. } | 2:11-cv-02870-WMA |
| COBRA ENTERPRISES OF UTAH, INC., } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Cobra Enterprises of Utah, Inc. ("Cobra"), for summary judgment seeking dismissal of all claims brought by plaintiffs, James Avery ("Avery") and Lynn Avery ("Mrs. Avery").[1] The Averys instituted the above-entitled action in the Circuit Court of Jefferson County on July 15, 2011. Cobra removed the case to this court on August 16, 2011, based on 28 U.S.C. § 1331, arguing that the non-diverse defendant, Southeastern Guns, Inc., was fraudulently joined to defeat subject matter jurisdiction. Southeastern Guns was dismissed on September 8, 2011. Cobra is now the only defendant.

The original Avery complaint alleged that Cobra (1) acted

---

[1] James Avery is the individual hurt in the incident that led to the filing of this suit. Lynn Avery's consortium claim is derived from her husband's injury claim. James will be referred to as "Avery." Lynn will be referred to as "Mrs. Avery."

1

wantonly, (2) breached an implied warranty of merchantability, and (3) is liable under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). Mrs. Avery appended a loss of consortium claim, alleging that as a proximate consequence of the wrongful acts complained of, she, as a spouse, also suffered. After Cobra moved for summary judgment, the Averys agreed to dismiss the AEMLD claim and the wantonness claim. Therefore, only the Averys' breach of implied warranty claim and Mrs. Avery's consortium claim are still at issue. For the reasons stated below, summary judgment will be denied as to both of these remaining claims.

### Facts[2]

The action arises out of injuries sustained by Avery on February 10, 2010 when he dropped a Cobra Model C32 derringer ("derringer"), and it fired into his abdomen. The Cobra derringer is significantly smaller than other derringers on the market and attracts consumers who like its very small size. Avery's son, James, purchased the derringer for Avery because Avery wanted a small, concealable firearm that would not be detected when he carried it in his pocket. Shortly after James purchased the firearm, he gave it to his father. In 2004, Avery began carrying the derringer every day for personal protection. He regularly carried it without the safety engaged.

---

[2] Because of the procedural posture, all admissible evidence is viewed in the light most favorable to Avery.

On the day of the incident, Avery ran some errands, carrying the loaded derringer in his pants pocket with the safety disengaged, the way he always carried it. He then entered his vehicle and placed the loaded derringer in the console. When he reached his home, he exited his vehicle carrying magazines, his wallet, keys, soda bottles, and the derringer. He walked to the trashcan on his deck to throw away the soda bottles. While he was attempting to open the trashcan, he dropped the derringer, which, as stated above, did not have the safety engaged. The derringer hit the deck, whereupon it discharged and shot him in the abdomen.

Cobra and Avery differ in their descriptions of the safety devices on the derringer. Their differences may or may not be material. Cobra asserts that the safeties "function independently, and both are effective." Doc. 97 at page 5. However, Avery contends that there are not two separate and independent safeties because "[t]o engage ... [the cross-bolt], one has to actually pull back the hammer before the safety can be employed in the SAFE position." Doc. 45 at page 3. However, there is no dispute that Avery did not have either of the safety features engaged when the derringer discharged on February 10, 2010.

Avery had experience with firearms throughout his life. He went hunting for the first time at age 6, used a pistol around age 8, handled a semi-automatic handgun around age 18, and has carried a pistol permit since the age of 18. He also served in the Navy

where he received formal firearm training. He had experience both with firearms that have manual safeties and firearms that have no safeties at all. He had no experience with a derringer until he acquired the one at issue. Upon receiving any new firearm, he always examined it himself to figure out how it works, but he does not typically read the instruction manual right away. He said he "probably...looked over" the derringer's manual at some point while he owned it. Avery July 18, 2012 depo at 53. He testified that he knew a firearm could discharge if mishandled, but he did not know that a firearm could be expected to discharge if dropped while fully loaded with the safety off. He did not engage the derringer's safety because he carried it for protection and wanted to be able to pull it out and fire quickly.

## Analysis

**Cobra's AEMLD Arguments**

Cobra contends that the Averys can not make out a claim for breach of implied warranty because they cannot make a case for AEMLD, and because a state law breach of warranty claim is subsumed within an AEMLD claim. To support this argument, Cobra quotes the Eleventh Circuit as follows:

> courts applying Alabama law have seen fit to subsume U.C.C.-based breach of implied warranty claims into tort and product liability claims **where the product is fit for its intended use** and there is no evidence of 'non-merchantability' other than a general allegation that the product contains inherent dangers.

4

Doc. 97 at 11, quoting *Bodie v. Purdue Pharma Co.*, 236 F. App'x 511, 523 (11th Cir. 2007)(emphasis added). However, this pronouncement is not applicable here because Avery's claim for breach of implied warranty is that the derringer was **not fit for its intended use**. Whether the derringer was fit for its intended use is the very issue this court is called upon to resolve, and Cobra's conclusory statement does not convince the court that an AEMLD claim subsumes an implied warranty claim. Of course, the Averys may not succeed in their claim that the derringer was not fit for its intended purpose, but the fact that they are dismissing the AEMLD claim does not prevent them from claiming a breach of implied warranty. The Alabama Supreme Court addressed this issue in *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101 (Ala. 2003), where it said: "a claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product." *Id*. at 111 (Ala. 2003). Therefore, Avery's breach of implied warranty claim does not fail merely because the AEMLD claim is no longer in the case.

Cobra also argues that this "case is a design defect case under the AEMLD. . . . No matter how Plaintiff spins this case, at its heart it is a case of alleged design defect." Cobra's reply at 3. This idea permeates Cobra's reply brief; many of Cobra's arguments address liability under the AEMLD rather than breach of

5

warranty. However, it does not matter that Cobra thinks the Averys' claim is really an AEMLD claim. The Averys have expressly dropped their AEMLD claim. The only claim before the court is a breach of implied warranty claim.  In order for Cobra to obtain summary judgment, it must demonstrate that, as a matter of law, there is no viability to the Averys' breach of implied warranty claim. Cobra does not need to quarrel over what kind of claim the Averys *should* have brought; only that the claim that is brought is so devoid of merit that it is susceptible to a Rule 56 challenge.

**Implied Warranty Claim**

In order to make a claim for breach of implied warranty "the plaintiff must prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach." *Barrington Corp. v. Patrick Lumber Co. Inc.*, 447 So. 2d 785, 787 (Ala. Civ. App. 1984), *quoting Storey v. Day Heating and Air Conditioning Co.*, 319 So. 2d 279 (Ala. Civ. App. 1975). Because this case is at the summary judgment stage, these plaintiffs only have to demonstrate that there is at least an open question of material fact as to each of these elements.

<u>Existence of Warranty</u>

The first step in the analysis is a determination of whether there is a factual basis for finding an implied warranty. The Alabama Code provides that an implied warranty of merchantability for goods "is implied in a contract for their sale if the seller is

a merchant with respect to goods of that kind." Ala. Code § 7-2-314 (1). Cobra says there was no implied warranty because Cobra was not a "seller" under the statute. Cobra argues that a defendant must be in privity with the injured party in order to be a "seller." Avery argues, to the contrary, that Cobra is a "seller" because Alabama law does not require a defendant to be in privity with the plaintiff in order to be a "seller."

In 1976, the Alabama Supreme Court made it clear that there was no privity requirement in a personal injury claim for breach of implied warranty. *See Bishop v. Faroy Sales,* 336 So. 2d 1340 (1976). The Alabama Supreme Court there held that privity is not required in a suit for breach of warranty as long as (1) a person was injured and (2) it was reasonable to expect that the said person would use the goods. *Id*. at 1345. After this holding, a manufacturer could be sued in Alabama for a personal injury caused by a breach of implied warranty.

Cobra argues that *Bishop* lost its precedential value after *Ex parte General Motors Corp.*, 769 So. 2d 903 (Ala. 1999). In *General Motors*, the Alabama Supreme Court admittedly said that summary judgment on a claim of implied warranty of merchantability would not have been appropriate against the manufacturer because "implied warranties are applicable only to sellers." *Id.* At 910. However, this statement was *dicta.* No such claim was before the court. The quoted language is the extent of the discussion of a non-issue. The

court did not say, and was not called upon to say, that it would have over-turned *Bishop* if the issue had unavoidably been presented.

An implied warranty claim for **economic** damages does require privity. *See Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079 (Ala. 2003). So it is possible that in *General Motors* the court was referring to a summary judgment on a claim for economic damages rather than personal injury damages. Four years after *General Motors*, the court stated that it previously "abolished privity requirements only in actions involving personal injury to natural persons," but "the privity requirements still remain []in cases of strictly economic injury." *Id*. at 1087. Therefore, even after *General Motors*, the court has said that privity is not required in a case involving personal injury. This court does not find that the court's *dicta* in *General Motor*s is sufficient to prove that the court has changed or would change its long-standing interpretation of implied warranties of merchantability under § 7-2-318.[3] *Bishop* is still controlling precedent. Thus, privity is not required, and Cobra is a "seller" under the Alabama statute.[4] Cobra

---

[3] *See* Judge Blackburn's memorandum opinion in *Sullvan v. Lowe*'s, 2:03-CV-02903 (N.D. Ala. April 22, 2009) for a similar conclusion regarding the effect of *Ex parte General Motors* on Alabama law of what constitutes a seller under Alabama Code § 7-2-314 (1).

[4] Cobra cites some other cases in support of its assertion that a claim for a breach of an implied warranty of merchantability applies only to sellers in privity with the plaintiff. Cobra cites *Weaver v. Dan Jones Ford, Inc.*, 679 So. 2d 1106, 1113 (Ala. Civ. App. 1996); however, *Weaver* deals with economic damages not personal injury. As stated above, economic damages require

8

does not take issue with the fact that Avery's evidence establishes a *prima facie* case as to the other elements necessary to prove the existence of an implied warranty. Therefore, for purposes of Cobra's Rule 56 motion, Avery has established that there was an implied warranty.

Breach of Warranty

The next step is to determine if there is a question of disputed fact as to whether Cobra breached the above assumed implied warranty of merchantability. The controlling statute lists six requirements that goods must meet in order to be merchantable. *See* Ala. Code § 7-2-314. The requirement that the Averys focus on is that Cobra's goods must be "fit for the ordinary purposes for which such goods are used." *Id.* at (2)(c). Cobra confidently claims that "there are no disputed facts regarding the fitness of the product." Doc. 97 at 23. However, simply saying that there are no disputed facts on this issue does not make it so. Cobra reaches its conclusion based on its argument that "the product performed as designed," but the Averys contend:

> 'ordinary purposes' include not only those

---

privity. Personal injury does not. Cobra also cites *Chase v. Kawasaki Motors Corp., U.S.A.*, and claims that it held "summary judgment for the manufacturer was appropriate because implied warranties apply only to the seller of goods, not the manufacturer."140 F. Supp. 2d 1280 (M.D. Ala. 2001). This is an incorrect statement of the holding. The court in *Chase* did hold that summary judgment was appropriate, but it did not even discuss whether the manufacturer was a seller. It held that summary judgment was appropriate because there was "simply no evidence in the record that Defendants breached any implied warranty of merchantability owed to Plaintiffs." This holding focused not on the existence of a warranty–as Cobra suggests–but instead on whether the existing warranty was breached.

9

> uses intended by the manufacturer or seller, **but those which are reasonably foreseeable**. Whether goods are fit for their ordinary purposes is generally a factual question.

Doc. 45 at 24 (emphasis added). The Averys contend that it could be reasonably anticipated that a carrier of this particular derringer might need to fire so quickly that a pause to disengage the two safety features would destroy the defensive advantage he was buying. This is analogous to the reasoning of hair-trigger artists of the Old West. It may be an uphill battle for the Averys to convince a jury that there exists such a reasonable expectation, either by seller or by user, but on the current state of the evidence, the Averys will be afforded the opportunity to put their theory to the jury test. If the jury accepts Avery's argument, it would not matter if the derringer performed precisely as Cobra designed it to perform. It could still be found not fit for the reasonably foreseeable use to which Avery wanted to put it. The Averys' argument is that because this derringer is designed to be used for close-up self-defense, it is normal practice to carry it with the safety off, and thus, in order to meet the standard for merchantability, the derringer should not discharge when dropped with the safety off. The Averys argue that there is no point in having available an instantaneous response to an attack if the response is so slow as to be ineffective. The parties disagree about what the derringer's ordinary purposes are and whether it was fit for such purposes. These questions will be left to the jury.

Cobra also points out that the Averys have offered no expert testimony to describe a defect, and says that an expert is required in order to establish a breach of implied warranty. However, the authority Cobra cites does not fully support this proposition. Cobra relies upon *Clark v. Allied Healthcare Products, Inc.* 601 So. 2d 902 (Ala. 1992). However, the court in *Clark*, in affirming a grant of summary judgment, did so because there was "no evidence of a **causal relationship** between a breach of warranty and [plaintiff's] injury." *Id.* at 903 (emphasis added). It did not say that expert testimony of a defect is required. Cobra also says that the Alabama Code's "comments to [the statutory sections on warranties] regularly refer to a plaintiff's burden to prove a defect." Doc. 97 at page 27. Instead, the said comments' discussion of "defect" revolves around the buyer's examination of the goods for defects and the effect that the examination or non-examination has on the proximate cause question.[5] If the user of the product should have discovered a defect, his injuries arguably are the result of his own negligence rather than the result of a breach of an implied warranty. No burden is placed on him to prove defect beyond proof that the product was unreasonably dangerous when used as intended. The Averys may have to argue that if Cobra could not design a derringer that would not

---

[5]"Action by the buyer following an examination of the goods which ought to have indicated the defect complained of can be shown as matter bearing on whether the breach itself was the cause of the injury." Code of Alabama § 7-2-314, Implied warranty: Merchantability; usage of trade; human blood and tissues, Comment 13.

discharge when dropped, it should not have placed a derringer on the market.

Avery cites *General Motors*, 769 So. 2d 903, for the proposition that

> Alabama law does not require that an expert witness testify in every case involving an alleged malfunction of a product where the plaintiff has sued alleging a breach of the implied warranty of merchantability. Given the uncontradicted evidence in this case, we conclude that [plaintiff] presented substantial evidence of a breach of the implied warranty of merchantability and of damage and thereby created a genuine issue of material fact.

*Id.* at 913.  Of course, expert testimony can be helpful in proving a breach, but it is not a *sine qua non*. Therefore, the Averys' implied warranty claim survives, despite the lack of an expert witness.

<u>Proximate Cause</u>

The last essential element for proving a breach of implied warranty claim is that the injury was proximately caused by the breach. Cobra says that when a product user unreasonably fails to examine the product before he uses it, and injury results, the proximate cause is the user's unreasonable behavior rather than any alleged breach of implied warranty. The following is the excerpt from *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101 (Ala. 2003), that Cobra cites in support of this assertion:

> ("Of course if the buyer discovers the defect and uses the goods anyway, or if he unreasonably fails to examine the goods before

12

> he uses them, *resulting injuries may be found to result from his own action rather than proximately from a breach of warranty.*") (emphasis added). See also Official Comment to § 7-2-715, at paragraph 5 ("Where the injury involved follows the use of goods without discovery of the defect causing the damage, the question of 'proximate' cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects. If it was not reasonable for him to do so, or *if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty.*") (emphasis added). See also *Green v. American Tobacco Co.*, 154 So.2d 169, 172 (Fla.1963) ("If the defect is discoverable by simple observation then the law will imply no warranty against its existence.")

*Id.* at 115-16 (Ala. 2003). Rather than supporting Cobra's belief that the undisputed proximate cause of Avery's injury was his own behavior, *Spain v. Brown & Williamson* holds that whether a user properly examines a product is only one factor to be considered in the proximate cause analysis. If the user's failure to examine was unreasonable, then that failure can be a contributing cause of the resulting injury. Avery did examine the derringer before he used it, but whether his examination was reasonable, and whether what he did or did not do thereafter was a proximate cause of his injury are jury questions.

   Cobra goes on to argue that summary judgment must be granted if "there is a total lack of evidence from which the fact-finder may reasonably infer a direct causal relation between the culpable

13

conduct and resulting injury." Doc. 97 at page 31, citing *Gooden v. City of Talladega*, 966 So. 2d 232, 240 (Ala. 2007). However, what Cobra does not quote is the following language that immediately precedes its quote: "generally proximate cause is a question to be determined by the trier of fact." *Id*. at 239.

Cobra makes yet another argument that it purports to separate from its proximate cause argument but that is itself an extension of its proximate cause argument. Cobra argues that Avery's warranty claim should be dismissed because he "failed to properly examine and use the subject firearm." Cobra relies upon a case in which a plaintiff was barred from recovery due to his failure to use a safety device on a firearm. *See Burleson v. RSR Group Fla., Ind.,* 981 So. 2d 1109 (Ala. 2007). However, *Burleson*, is not preclusive because it is a tort case in which the action was dismissed because of the plaintiff's undisputed contributory negligence. *Id.* Cobra says that "[t]here is no meaningful way to distinguish [*Burleson*] from a finding that Plaintiff in this case should be held to have assumed the risk of failing to use an available, obvious, and effective safety device." Doc. 97 at 36. There is, however, a crucial distinction between *Burleson*, which involved a tort claim, and the case before this court, which is a claim for breach of implied warranty, recovery for which is not barred by plaintiff's alleged contributory negligence. As previously stated, Avery's conduct is a factor to be considered

14

when determining the proximate cause of his injury; but because this is not a tort action, any negligence of which he was guilty does not automatically bar his recovery under a non-tort theory. Although Avery had the safety off and dropped the derringer, a reasonable jury could conclude that his injury was proximately caused, in whole or in part, by Cobra's breach of warranty rather than entirely by his own lack of due care.

**Mrs. Avery's Consortium Claim**

The only argument Cobra makes for dismissal of Mrs. Avery's consortium claim is that "if [Avery's] causes of action are dismissed, Lynn Avery's loss of consortium claims must also be dismissed." This is, of course, correct. Because the breach of implied warranty claim remains, so too will Mrs. Avery's consortium claim.

**Conclusion**

For the foregoing reasons, a separate order will be entered denying Cobra's motion for summary judgment as to the Averys' breach of implied warranty claim and Mrs. Avery's consortium claim. All other claims will be dismissed.

Done this 23rd day of May, 2013.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE